# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**TONI MANHEIMER,**

   **Plaintiff,**

            **Case No. 2:18-cv-5263**

  **v.**         **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

   **Defendant.**


## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Toni Manheimer for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I. PROCEDURAL HISTORY

On October 18, 2013, Plaintiff filed an application for benefits, alleging that she has been disabled since December 15, 2010. R. 170–84. Plaintiff's application was denied initially and upon reconsideration. R. 95–99, 103–05. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 106–08. Administrative Law Judge Leonard F. Costa ("ALJ") held a hearing on February 23, 2017, at which Plaintiff, who was represented by counsel, appeared

1

and testified, as did a vocational expert. R. 33−67. In a decision dated March 24, 2017, the ALJ

concluded that Plaintiff was not disabled within the meaning of the Social Security Act since

October 18, 2013, the date the application was filed. R. 12−21. That decision became the final

decision of the Commissioner of Social Security when the Appeals Council declined review on

February 5, 2018. R. 1−8. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF

No. 1. On August 28, 2018, Plaintiff consented to disposition of the matter by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. ECF No. 10.[1] On March 11, 2020, the case was reassigned to the undersigned. ECF

No. 30. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.*

---

[1] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

*Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 18, 2013, the application date. R. 14.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spines, lumbar disc herniation, obesity, and bilateral lumbar, and cervical radiculopathy. *Id*. The ALJ also found that hypertension and anxiety were not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 14–15.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of sedentary work with certain additional limitations. R. 15–20. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a medical secretary. R. 21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act since October 18, 2013, the application date. *Id*.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 28. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

*Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 29.

**IV.    DISCUSSION**

  **A.    Obesity**

   Plaintiff argues that the ALJ erred by failing to meaningfully evaluate Plaintiff's obesity at step three and at subsequent steps in accordance with SSR 02-1p. *Plaintiff's Moving Brief*, ECF No. 28, at 15−23. Although obesity was removed as a "listed impairment" in 1999, the Court of Appeals for the Third Circuit has recognized that this removal "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "To the contrary, the Commissioner promulgated SSR 00-3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Id.* "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id.* (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.").

   SSR 02-1p provides in relevant part as follows:

> [W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the

listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

. . . .

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," . . . satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function. . . .

We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .

We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings. [Footnote omitted.]

However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

9

SSR 02-1p, 67 Fed. Reg. 57859-02. Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016)  (quoting *Jones,* 364 F.3d at 505). However, "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 504.

Here, the ALJ identified obesity as one of Plaintiff's severe impairments at step two of the sequential evaluation. R. 14. At step three, the ALJ expressly noted the guidelines set forth in SSR 02-1p and concluded that Plaintiff's obesity, when considered in combination with her other impairments, does not meet or medically equal any listing, reasoning as follows:

> There is no specific medical listing regarding obesity, but I have evaluated the impairment herein pursuant to the extensive and detailed guidelines set forth in SSR 02-0lp, including the references in the listings contained in sections 1.00. As SSR 02-lp states: "However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." Thus, I have fully considered obesity in context of the overall record evidence in making this decision.

R. 14–15. At step three, the ALJ also considered Listing 1.02, which addresses major dysfunction of a joint, and Listing 1.04, which addresses disorders of the spine, and concluded that Plaintiff did not meet or medically equal either Listing. R. 15. At step four, the ALJ again specifically considered Plaintiff's obesity, R. 19–20, and concluded that "the record does not show that this [Plaintiff's obesity] causes any significant limitations in correlation with her other

10

impairments," R. 20. In making this finding, the ALJ considered years of medical records including, *inter alia*, records detailing Plaintiff's musculoskeletal impairments but primarily unremarkable physical examinations with normal range of motion, strength and reflexes; mild findings on x-rays of the cervical and lumbar spines and right knee; consistent ability to ambulate without an assistive device; high blood pressure controlled by medication; treatment consisting of pain medication and sporadic physical therapy; pain that was stable with medication; and independence in all daily living activities, including caring for her three minor children, cooking, laundry, and driving a car. R. 15–20. As set forth in more detail below, the ALJ then crafted an RFC for sedentary work with certain additional limitations. R. 15. Accordingly, the ALJ properly considered Plaintiff's obesity at step three and at subsequent steps when he recognized Plaintiff's obesity as a severe impairment, recognized that he must consider the effect of Plaintiff's obesity on her other impairments, found that none of Plaintiff's impairments, whether considered singly or in combination, met or equaled a listed impairment, and specifically and in detail considered Plaintiff's musculoskeletal impairments–and the limitations imposed by all of Plaintiff's impairments–in determining Plaintiff's RFC. The ALJ expressly found, after engaging in that analysis, that Plaintiff's impairments did not preclude the performance of substantial gainful employment since October 18, 2013, the date on which her application was filed. R. 15–21; *see also Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; *Jones*, 364 F.3d at 505 (stating that if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination"); *Herron v. Comm'r of Soc. Sec.*, 386 F. App'x 68, 71 (3d Cir. 2010) (finding substantial evidence

11

supported the ALJ's conclusion that the claimant did not suffer from a listed impairment where, *inter alia*, "[a]lthough [the claimant] is obese, there is substantial evidence that she could perform all activities of daily living and could drive and care for her children during this time"); SSR 02-1p.

To the extent that Plaintiff posits—without citation to record evidence or specifically identifying any additional limitations caused by her obesity—that her obesity is disabling, this Court is not persuaded. *See Carter v. Comm'r Soc. Sec*., 805 F. App'x 140, 143 (3d Cir. 2020) ("In any event, remand to reconsider her combined impairments is not required because Carter has relied on the language of SSR 02-1p stating that obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her obesity or headaches affected her ability to perform basic work activities" and that the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original); *Woodson*, 661 F. App'x at 765 ("Woodson simply speculates about how his obesity might exacerbate other impairments—his back disorder, complaints of pain, arthritic knees, congestive heart failure, asthma attacks, or sleep apnea . . . . But Woodson never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling. Instead, the evidence before the ALJ suggests otherwise."); *Tietjen v. Berryhill*, No. CV 17-8030, 2019 WL 1238830, at *4 (D.N.J. Mar. 18, 2019) (rejecting argument that the ALJ failed to properly consider the claimant's obesity where the claimant "failed to specify how her obesity met the disability criteria contained in the SSR and how her obesity precluded her from performing sedentary work with postural and environmental limitations, as the ALJ concluded she could" and where the claimant "failed to list obesity as an illness, injury, or condition constituting a disability in her application for SSI and

SSDI benefits"); *Vargas v. Colvin*, No. CV 15-2502, 2017 WL 123436, at *5 (D.N.J. Jan. 11, 2017) (affirming denial of benefits where, *inter alia*, "[a]lthough [the ALJ's] analysis is rather brief, it is appropriate given the absence of any medical evidence in the record indicating that Mr. Vargas's obesity has affected his functioning in any way. Further, Vargas points to none."); *Jones v. Colvin*, No. CV 14-6778, 2016 WL 7338528, at *6 (D.N.J. Dec. 19, 2016) ("Here, ALJ O'Leary considered Plaintiff's obesity both individually and in combination with his other impairments. Plaintiff points to no evidence in the record to illustrate that the ALJ failed to appropriately consider obesity."). This Court therefore concludes that the ALJ's discussion of Plaintiff's obesity is sufficient and permits meaningful judicial review. *See Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; SSR 02-1p. Plaintiff's assertion of error in this regard is therefore without merit.

B.      RFC

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence. *Plaintiff's Moving Brief*, ECF No. 28, pp. 23–39. A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). It is the ALJ who is charged with determining a claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak*, 777 F.3d at 615 (stating that the ALJ has discretion to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his

discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a full range of sedentary work with certain additional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 416.967(a). The claimant must be able to stand every 30 minutes, for at least three to four minute at a time; is able to occasionally climb ramps and stairs, stoop, kneel, crouch, balance or crawl; never climb ladders, ropes or scaffolds; occasionally push and/or pull arm control levers; and frequently handle and finger objects; with no overhead reaching bilaterally.

R. 15. In making this determination, the ALJ detailed years of record evidence including, *inter alia*, records detailing Plaintiff's musculoskeletal impairments but unremarkable physical examinations with primarily normal range of motion, normal strength, normal sensory exam, and normal reflexes; negative bilateral straight leg raises; 5/5 muscle, grip, and pinch strength in the upper extremities; intermittent neck pain that had slowly improved since onset; mild findings on x-rays of the cervical and lumbar spines and right knee; consistent ability to ambulate without an assistive device; high blood pressure controlled by medication; no muscle atrophy in the upper or lower extremities; treatment consisting of pain medication and sporadic physical therapy; pain that was stable with medication; no reported difficulty paying attention; ability to follow written and spoken instructions; and independence in all daily living activities, including caring for herself and her three minor children, cooking, cleaning, doing laundry, shopping, and driving a car. R. 15–20. The record unquestionably contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

14

In challenging this determination, Plaintiff contends that the ALJ improperly discounted the opinions of her treating physician, Agatha Song, M.D., and neurologist, Peter C. Kwan, M.D., and failed to incorporate their more restrictive limitations in the RFC. *Plaintiff's Moving Brief*, ECF No. 28, pp. 23–35. "'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). An ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment

15

relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 416.927(c)(1)–(6); *see also* SSR 96-2p.[2] Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Finally, "'[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]'" *Chandler*, 667 F. 3d at 361 (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011)).

Here, the ALJ considered the opinions of Drs. Kwan and Song and assigned "little weight" to those opinions, reasoning as follows:

> March, April and May 2011 neurological examinations with Dr. Peter Kwan indicated that the claimant was being evaluated after being injured [from a fall on ice in December 2010]. The claimant reported daily headaches, neck pain, lower

---

[2] The Social Security Administration amended the regulations addressing the evaluation of medical evidence, *see*, *e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (providing that the rules in this section apply only to claims filed before March 27, 2017), and SSR 96-2p was rescinded. As previously noted, Plaintiff filed her claim for benefits in October 2013.

back pain, and right knee pain with swelling. Gait was normal. The doctor noted sensory loss in the upper and lower extremities to light touch and pinprick, but motor examination revealed normal strength in both upper and lower extremities. Muscle tone was normal and there was no atrophy. Cervical spine examination showed tenderness on deep palpation. Pain was enhanced with extension, flexion and lateral bending bilaterally. Muscle guarding was noted with flexion beyond 25 degrees, extension of more than 20 degrees and lateral bending of more than 25 degrees. Lumbar spine examination showed tenderness on deep palpation with moderate spasms. There was some muscle guarding with flexion, extension and lateral bending. Passive straight leg raise was positive at 55 degrees. The doctor diagnosed posttraumatic cephalgia, post-traumatic vertigo, post-concussion syndrome, rule out cerebral contusion, traumatic injury of the cervical and lumbar spine, rule out traumatic cervical and lumbar disc herniation, and traumatic injury to both knees. Dr. Kwan opined that the claimant was totally disabled. He recommended continued physical therapy with Dr. Boyd (Exhibit 2F [R. 277–91]).

R. 17.

In a January 2017 physical residual functional capacity questionnaire, Dr. Song reported that the claimant had chronic pain in the neck and lower hack with tingling and numbness in both hands. The doctor noted treatment with pain medication and physical therapy. He noted that she did not need a cane or other assistive device. He reported that her pain and other symptoms frequently interfered with the attention and concentration needed to perform even simple work tasks and that she was incapable of performing even "low stress" jobs. He stated that she would be absent from work more than four days per month due to her symptoms. He opined that she could sit, stand and walk for less than two hours and occasionally lift less than ten pounds. He also noted that she would need to take unscheduled breaks every 15 minutes, for five to 10 minutes at a time. He indicated that she could rarely look down or look up and could never hold her head in a static position. He also indicated that she could rarely stoop and never crouch, squat or climb ladders. He reported limitations with reaching, handling and fingering (Exhibit 14F [R. 403–07]).

R. 19.

Dr. Kwan reported significant symptoms and opined that the claimant was disabled; however, I give his opinion little weight. The overall record does not support his opinions. As noted above, the claimant's symptoms have improved since she was initially treated by Dr. Kwan. I also note the significant limitations given by Dr. Song (Exhibit 14F). These are also given little weight, as they are not supported by the record. Dr. Song provides no supporting documentation. In addition, I note that despite all of the claimant's signs and symptoms, she has consistently had a normal gait and has not needed an assistive device to ambulate. Moreover, her daily activities (Exhibit 3E, testimony) belie a complete inability to work and support that she is capable of performing within the guidelines of the above residual

functional capacity, even giving the claimant every benefit of the doubt with regard to her daily activity limitations. I also note the report of Dr. Weber, where the claimant indicated that she was independent in all daily living activities (Exhibit 9F). While I do not negate the fact that the claimant does have some limitations due to her impairments, there is little support for the significant limitations and/or findings of disability given by the doctors [Dr. Song and Dr. Kwan].

R. 20. The Court finds no error in the ALJ's evaluations in this regard.

Plaintiff challenges these evaluations, however, arguing that although the ALJ contends that Plaintiff's daily activities belie a complete inability to work, "the ALJ's decisional review of that testimony regarding plaintiff's daily activities would seem to endorse the opinions and findings of the treating and examining orthopedist and neurologist[.]" *Plaintiff's Moving Brief*, ECF No. 28, p. 29. In support, Plaintiff cites to the ALJ's recitation of Plaintiff's hearing testimony as follows:

A normal day consists of waking, getting the kids up and walking them out to the school bus. She then goes back to bed. Most of the time she is lying down. She does laundry. She cannot handle going down stairs, so she tries to keep the loads small. The kids do their own homework. She does housework a little at a time. She cannot do it all at once. After each project, she lies down. The children help. She cannot bend. The children clean what she cannot reach. She is able to grocery shop. Her pain causes stress. She has anxiety but she has founds [sic] ways to control it. She can lift a gallon of milk. She cannot move too quickly. She hit her head when she fell and has dizziness. She has pain every day. The pain is generally around a "7" or "8"; she takes Tylenol. She has hip pain. She has problems lifting her arm. She cannot stand or sit for too long. Her jobs required pulling files, bending, and reaching. She cannot squat or bend. She gets dizzy bending. She cannot sit still and she cannot type anymore. She cannot stay put in one place and laying [sic] down is a problem. Her hands go numb and she flexes them until they come back. She sits for about 15 minutes. The pain interferes with her ability to concentrate. She fell in 2010 and fell again in 2016. She is right handed. I note at the hearing the claimant stood and sat several times.

*Id*. at 29−30 (quoting R. 16) (internal quotation marks omitted). Plaintiff argues that this testimony does not contradict the findings of Dr. Kwan and Dr. Song. *Id.* at 30.

Plaintiff's argument is not well taken. As set forth above, the ALJ detailed years of medical evidence, including, *inter alia*, relatively unremarkable medical findings, ability to

ambulate without an assistive device, and improvement in symptoms that were inconsistent with these doctors' reports of significant limitations. R. 15−20. Plaintiff's reliance on the ALJ's recitation of her hearing testimony is unavailing because the ALJ properly discounted her subjective complaints. R. 16−17, 20. In this regard, however, Plaintiff challenges the ALJ's consideration of Plaintiff's subjective complaints, apparently arguing that the ALJ improperly minimized Plaintiff's complaints. *Plaintiff's Moving Brief*, ECF No. 28, pp. 35−38. This Court disagrees.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

19

evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[3]

Here, the ALJ properly followed this two-step evaluation process.  After considering the record evidence, including Plaintiff's hearing testimony, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 16–17. Again, as previously discussed, the ALJ

---

[3]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

detailed years of medical evidence and record testimony to support his finding. R. 15−20. The

ALJ also went on to explain as follows:

> Consequently, based on the entire record, including the testimony of the claimant,
> I conclude that the evidence fails to support the claimant's assertions of total
> disability. Despite the evidence demonstrating that the claimant has suffered from
> a medically determinable "severe" impairment, the evidence also establishes that
> the claimant retains the capacity to function adequately to perform many basic
> activities associated with work. Although the claimant suffers some limitation due
> to her impairments, and as a result, her capacity to perform work is affected, I find
> that the claimant retains the residual functional capacity to perform the exertional
> demands sedentary work, with additional limitations as noted above.

R. 20.

Plaintiff challenges this evaluation, pointing to evidence in the record that she believes

supports her subjective complaints, namely, an office visit note authored by Gary L. Yen, M.D.,

noting that Plaintiff's April 2011 MRIs of the cervical and lumbar spines reveal "significant

findings." *Plaintiff's Moving Brief*, ECF No. 28, pp. 34−35 (citing R. 292−93 (detailing cervical

spine MRI findings reflecting "a bulging disc at C4-C5. Disc herniation is present at C5-C6

(central) and C6-C7 (central). Spinal stenosis is noted at C5-C6 and C6-C7. [S]traightening of

spine[.] There is neuroforaminal stenosis at C6-7 bilaterally" and lumbar spine MRI findings

reflecting disc herniation at L5-S1)). Despite these "significant" 2011 MRI findings, however,

the ALJ considered that Dr. Yen went on to find that Plaintiff admitted only intermittent neck

pain, symptom improvement, and normal gait as follows:

> Following an October 2012 office visit with pain management specialist, Dr. Gary
> Yen, the doctor indicated that the claimant alleged neck pain, but that it occurred
> only intermittently and that it has been slowly improving since the onset. She also
> reported bilateral shoulder and left arm pain, with associated numbness and tingling
> of the affected limbs, with headaches and dizziness. The claimant indicated that
> physical therapy for nine months provided some improvement. Gait was normal.
> Shoulder examination showed full range of motion with no tenderness to palpation.
> Lumbar spine examination showed full flexion, extension and lateral bending.
> Paraspinal muscles were without tenderness. Straight leg raise test was negative
> sitting and lying. The left arm showed a full range of motion was decreased strength

> on the left. Cervical spine examination showed straightening of the spine with loss
> of lordosis and range of motion was restricted with pain (Exhibit 3F).

R. 18. The ALJ further detailed later examinations that revealed similar findings as well as

normal or functional ranges of motion, R. 18−20, *i.e.,* findings that support the ALJ's evaluation

of Plaintiff's subjective complaints. In any event, the Court "will uphold the ALJ's decision even

if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial

evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec*., 497 F. App'x 199, 201 (3d Cir.

2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v.

Comm'r of Soc. Sec*., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the

evidence or impose their own factual determinations [under the substantial evidence standard].").

Accordingly, this Court concludes that the ALJ has sufficiently explained his reasoning

in assessing Plaintiff's subjective complaints and, in turn, his evaluation of the opinions of Dr.

Kwan and Dr. Song, and that his findings in this regard are supported by substantial evidence in

the record. The ALJ's evaluation of Plaintiff's subjective complaints and of this opinion

evidence is therefore entitled to this Court's deference. *See* 20 C.F.R. § 416.927(c)(3), (4), (6);

*Brunson*, 704 F. App'x at 59–60; *Chandler*, 667 F.3d at 361; *Miller*, 719 F. App'x at 134; SSR

16-3p; *cf. Malloy v. Comm'r of Soc. Sec*., 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility

determinations as to a claimant's testimony regarding pain and other subjective complaints are

for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis

v. Comm'r Soc. Sec*., 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently

evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of

claimant's subjective complaints and cited Claimant's daily activities and objective medical

reports").

In continuing to challenge the ALJ's RFC determination in this regard, Plaintiff complains that the ALJ accorded only "some weight" to the opinions of the state agency reviewing physicians, and questions the medical bases of the RFC found by the ALJ. *Plaintiff's Moving Brief*, ECF No. 28, pp. 30−31 (citing R. 20). However, as previously noted, it is the ALJ−not treating or examining physicians or state agency physicians—who makes the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. In addition, although Plaintiff complains that the ALJ afforded only some weight to the opinions of the state agency medical consultants, she fails to explain how the ALJ erred in doing so. *See Plaintiff's Moving Brief*, ECF No. 28, pp. 30−31; *see also Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d. Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case"). Moreover, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006); *see also Chandler*, 667 F.3d at 362 (stating that an ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision"); *cf. Glass v. Comm'r of Soc. Sec.*, No. CV 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("[T]he United States Court of Appeals for the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.") (collecting cases). In any event, as explained above, the ALJ did not simply rely on his lay opinion in making the RFC

determination; instead, he detailed years of medical evidence and hearing testimony, as discussed above, when determining Plaintiff's RFC. R. 15−20.

In short, the Court concludes that the ALJ's RFC determination is consistent with the record evidence and enjoys substantial support in the record.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 11, 2021                                  _____*s/Norah McCann King*_____
                                                                                NORAH McCANN KING
                                                                      UNITED STATES MAGISTRATE JUDGE

24